259 So.2d 825

**BALDWIN FURNITURE CO. OF BAY MINETTE, Inc., a Delaware Corp.**

**v.**

**G. W. WOODSON et al.**

**I Div. 704.**

Supreme Court of Alabama.

March 23, 1972.

W. H. Baldwin, Andalusia, for appellant.

278

J. Connor Owens, Jr., Bay Minette, for appellees.

PER CURIAM.

Plaintiffs, appellees, filed suit to recover from defendant, appellant, the sum of $30,000.00, plus some incidentals, due by promissory note, which provided for such payment in three annual installments of $10,000.00 each. The trial court, sitting without the aid of a jury, entered judgment for the first installment plus interest and attorney's fee totaling $13,909.97.

The issue created by the pleas was whether or not appellant was entitled to a credit of $7,026.47 on the note, the subject of the suit, arising from an alleged sales tax liability to the State of Alabama, which Gunter-Dunn, Inc. (sometimes referred to as Gunter-Dunn), paid. Gunter-Dunn, Inc., at the time of such payment, was the parent corporation of defendant. Appellant, prior to suit, tendered to appel-

lees the sum of $5,673.53, which, together with $7,026.47 that appellant claims, would have paid the first installment of the note in the sum of $10,000.00, plus interest.

The issue between the parties hereto has its origin in a business transaction wherein Gunter-Dunn, Inc., acting through its president, negotiated with appellees to purchase their corporate stock and assets in three retail furniture corporations, wholly owned by appellees and located in Baldwin County. The negotiations culminated in a sale and transfer of all the corporate stock of appellees in these corporate outlets and the assets thereof. One of the outlets was appellant. Delivery of the assets to Gunter-Dunn followed the sale.

Appellees signed an indemnity agreement which purported to protect Gunter-Dunn, Inc., against any outstanding and unpaid sales tax liability. This contract contains paragraph 7(c) upon which appellant relies in asserting its defense to payment of the note. We quote that part of 7(c) which we think is pertinent to the issues created by appellant's pleas:

"(c) In the event of any examination or deficiency in taxes to be paid . . . . for income taxes . . . . Sellers (appellees) will indemnify . . . . the said Buyer (Gunter-Dunn) therefrom. In the event that Sellers fail to fully indemnify and hold harmless the said Buyer from any deficiency in income tax, or tax of any type, kind or character that may be assessed against the Corporations for and on account of either of the Corporations' actions or actions and activities of the Sellers prior to closing date, Buyer may pay such taxes after notice to said Sellers and a reasonable opportunity afforded to Sellers to contest the same and upon such payments shall be entitled to be credited with the amount of such payment as a payment on the note or notes of the Corporations, or either of them, to be delivered to Sellers at time of closing in payment of the balance due to Sellers by Corporations as reflected in said consolidated balance

sheet dated August 31, 1969 under the item 'notes payable Stockholders' and provided for in Paragraph 4 hereof.

"It is further understood that the same indemnity, the same method of enforcing the indemnity, shall be effective as to any other liabilities of the Corporations which have not been disclosed to Buyer, and which would affect the net assets position of the Corporations as shown by said consolidated balance sheet of August 31, 1969.

"It is further understood that the method of enforcing this indemnity by crediting the notes payable to Sellers in the amount of Sellers' liabilities, should any arise, afford a mere cumulative remedy or method of enforcement, and shall in no way affect other remedies available to Buyer or to the Corporations after they become fully owned by Buyer." (Par. added)

Appellant filed four pleas to appellees' complaint. Appellees joined issue on these pleas which in substance are as follows:

Plea I asserts a tender to appellees of $5,673.53, representing the balance due on the first $10,000.00 annual installment of the note.

Plea II, in essence, claims that under the indemnity agreement, supra, appellant is entitled to a credit on its note, the subject of the suit, for a sales tax liability in the sum of $7,026.47 which was assessed by the State of Alabama against appellant. Gunter-Dunn, Inc., paid this assessment after demand on plaintiffs to pay, which they failed to do.

Plea III asserts that appellees, in their indemnity agreement, warranted that Baldwin Furniture Company of Bay Minette, Inc., one of the corporate outlets sold to Gunter-Dunn, had filed or caused to be filed and had paid, or caused to be paid, or made provision for the payment of all taxes which had or would become due, and further agreed to indemnify and hold harmless Gunter-Dunn, Inc., from any deficiency in any tax of any type, kind, or

character that might be assessed against Baldwin Furniture Company of Bay Minette, Inc., for and on account of business conducted prior to August 31, 1969; and appellant averred that at the time of the execution of said agreement there was an outstanding Alabama sales tax liability in the amount of $7,026.47 arising from business conducted by said Baldwin Furniture Company of Bay Minette, Inc., prior to August 31, 1969, of which appellees were given notice.

Plea IV asserts that appellees, in said indemnity agreement, warranted that a financial statement attached to said agreement of indemnity contained a complete listing of all liabilities of the three corporations as of August 31, 1969, and agreed that a credit could be taken against the note sued on for any liability not reflected in said financial statement. The plea also averred that there was an outstanding Alabama sales tax liability in the amount of $7,026.47 due by appellant from business conducted prior to August 31, 1969, which was not reflected in said financial statement, for which amount appellant was entitled to credit on the first installment of the note sued on, thereby leaving due on said note the sum of $5,673.53 which was tendered appellees.

We hold that, under the evidence, appellees carried their burden of proof pertinent to the complaint, and that appellant failed in its burden with respect to the pleas except Plea I. The trial court limited its judgment to the first installment of the note.

The evidence appearing in the record indicates that there was very little dispute, if any, about the essential facts. As we have observed, supra, there was no question about the tender to appellees, their refusal, and its payment into court. The main issue is whether or not there was a sales tax liability against appellant that falls within the purview of Pleas II, III, and IV, supra, and paragraph 7(c), supra, of the indemnity agreement. Appellant, in its argument in brief, bases its defense on para-

graph 7(c) of the indemnity agreement. No other part of the agreement is referred to or pointed out. We confine our review to this paragraph.

Appellant offered expert witnesses in accounting, including an auditor for the Sales Tax Division of the State Department of Revenue of Alabama. One of the certified accountants testified that the accounts receivable, reflected in the consolidated balance sheet attached to the indemnity agreement, amounted to $191,768.40, in which was included sales taxes in the sum of $7,026.47; and that the balance sheet did not show a liability therefor.

It further appears that the three corporate retail outlets, the subject of sale to Gunter-Dunn, Inc., had been paying sales tax to the State on a collection basis as provided by Title 51, § 786(7), Recompiled Code 1958, Pocket Parts, which, it appears, is the only plan of payment written in the Code. This section reads as follows:

"§ 786(7). Cash sales and credit collections to be reported.—Any person taxable under this article, having cash and credit sales, may report such cash sales, and the taxpayer shall thereafter include in each monthly report all credit collections made during the month preceding, and shall pay the taxes due thereon at the time of filing such report, but in no event shall the gross proceeds of credit sales be included in the measure of the tax to be paid until collections of such credit sales shall have been made."

Following sale and transfer of the stock to Gunter-Dunn, Inc., and the delivery of the assets of the involved outlets, the vendee decided to standardize the sales tax payments of these new acquisitions, so as to comport with the other outlets owned by said vendee, Gunter-Dunn. The vendee notified the State Department of Revenue, Sales Tax Division, that it wanted to pay the sales tax due by these stores on an accrual basis, that is, prepay the sales tax on the accounts receivable and not wait until collected as provided by the collection plan. In other words, the acquired stores were to be switched from a collection to an accrual plan.

Also, Gunter-Dunn, Inc., through its president, requested the State Department of Revenue, Sales Tax Division, to audit the books of the three acquired corporations and determine the amount of sales tax to be paid on the accounts receivable. The purpose was to pay the tax on these accounts receivable in advance and put the acquisitions thereafter on an accrual basis. The Department of Revenue, after completion of this requested audit, made an assessment in the sum of $7,026.47, which amount Gunter-Dunn, Inc., paid and which appellees, after reasonable notice, declined or failed to pay.

The president of Gunter-Dunn, Inc., testified that, under the collection plan of paying sales tax used by appellant prior to the sale of its stock and prior to the execution of the indemnity agreement, no liability for payment of the tax accrued until the accounts receivable were collected. We are in accord with that statement. The only plan of payment provided by § 786(7), supra, on credit sales is after collection and not before.

We are of the opinion that the assessment made by the Department of Revenue, fixing the amount to be paid on an accrual basis at $7,026.47, was not within the purview of the indemnity agreement for the reason that, on the date of the execution of said agreement, no change to an accrual basis was mentioned. It was not until sometime later, after Gunter-Dunn acquired the stock of the outlets and took over as the parent corporation, that the accrual plan was put into effect.

We fail to find any evidence that appellant, when its stock was sold to Gunter-Dunn, or thereafter, was delinquent in the payment of sales tax on its accounts receivable except about $1,300.00 which appellees paid. There was no liability on appellant's credit sales, before the change to an accrual basis, until the accounts were col-

lected in whole or in part. It is not shown that appellant suffered any loss because liability for the tax failed to appear in the balance sheet.

The assessment was a gratuitous entry, not based on any sales tax delinquency, but made to accommodate the accounting convenience of appellant. It is not binding on appellees under their indemnity agreement. For aught appearing in the evidence, appellant collected the sales tax on the accounts receivable if any were paid. If not paid, appellant should bear the loss arising from prepayment, because it elected to pay on an accrual plan which was not compulsory.

The judgment of the trial court is affirmed.

The foregoing opinion was prepared by Bowen W. Simmons, Supernumerary Circuit Judge, and was adopted by the Court as its opinion.

Affirmed.

HEFLIN, C. J., and LAWSON, COLEMAN, BLOODWORTH and McCALL, JJ., concur.